BRIAN M. BOYNTON, Acting Assistant Attorney General, Civil Division
ARUN G. RAO, Deputy Assistant Attorney General
GUSTAV W. EYLER, Director, Consumer Protection Branch
LISA K. HSIAO, Assistant Director
ZACHARY A. DIETERT
DAVID G. CROCKETT                    JS-6
   Trial Attorneys
   Consumer Protection Branch
   Civil Division, U.S. Department of Justice
   450 5th Street, NW, Suite 6400-South
   Washington, D.C. 20530
   Telephone: (202) 616-9027 (Dietert)
                (202) 305-7196 (Crockett)
   Facsimile: (202) 514-8742
   Zachary.A.Dietert@usdoj.gov
   David.G.Crockett@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OPENX TECHNOLOGIES, INC.,<br>a Delaware Corporation,<br><br>Defendant. | Case No. 2:21-cv-09693 DMG (AGRx)<br><br>**STIPULATED ORDER FOR PERMANENT INJUNCTION AND CIVIL PENALTY JUDGMENT [3]** |

Plaintiff, the United States of America, acting upon notification and

authorization to the Attorney General by the Federal Trade Commission ("FTC" or

"Commission"), filed its Complaint for Civil Penalties, Permanent Injunction, and

Other Equitable Relief ("Complaint"), in this matter, pursuant to Sections 5(a)(1),

5(m)(1)(A), 13(b), 16(a)(1), and 19, of the Federal Trade Commission Act ("FTC

Act"), 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 56(a)(1), and 57(b), and Sections

1

1303(c) and 1306(d) of the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6502(c) and 6505(d), and the Children's Online Privacy Protection Rule ("COPPA Rule"), 16 C.F.R. Part 312.  Defendant has waived service of the summons and the Complaint.  The parties have been represented by the attorneys whose names appear hereafter.  Plaintiff and Defendant stipulate to the entry of this Stipulated Order for Permanent Injunction and Civil Penalty Judgment ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

### FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendant violated the FTC Act by misrepresenting its Collection, use, and Disclosure of Covered Information and by misrepresenting its COPPA obligations and practices. The Complaint also charges that Defendant violated COPPA by failing to provide notice to Parents of their information practices and failing to Obtain Verifiable Parental Consent prior to Collecting, using, or Disclosing Personal Information from Children.

3.      Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.      Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5.      Defendant and Plaintiff waive all rights to appeal or otherwise challenge or contest the validity of this Order.

6.      This Order relates to activities in or affecting interstate commerce,

including such acts or practices involving foreign commerce that cause or are likely to cause reasonably foreseeable injury within the United States, or involve material conduct occurring within the United States.

### DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. **"Ad Tech Service"** means any of Defendant's products or services that enable or facilitate the marketing, sale, or purchase of digital or mobile advertising.

B. **"Ad Request Data"** means data that Defendant collects or receives from any entity to prompt the service of an advertisement, to the extent that the data includes information capable of identifying a specific individual or individual's device.

C. **"Affirmative Express Consent"** means that, prior to the collection of any Location Information, the consumer has made an affirmative action to assent to the collection of that data.  Provided, however, that an affirmative action does not include obtaining a consumer's approval for a preselected default option.

D. **"Child"** means an individual under the age of 13.

E. **"Collects"** or **"Collection"** means, with respect to Personal Information, the gathering of any Personal Information from a Child by any means, including but not limited to:

    1. Requesting, prompting, or encouraging a Child to submit Personal Information online;

    2. Enabling a Child to make Personal Information publicly available in identifiable form; or

    3. Passive tracking of a Child online.

F. **"Covered Information"** means information linkable to a specific consumer, computer, or device, including the following when linkable to

3

a specific consumer, computer or device: (a) Personal Information; (b) Location Information; (c) behavioral data (e.g., videos viewed, ads viewed, pages clicked, etc.); and (d) profile data (e.g., age, gender, ethnicity, income net worth, political affiliation, etc.).

G. **"Defendant"** means OpenX Technologies, Inc. ("OpenX"), a corporation, and its successors and assigns.

H. **"Disclose" or "Disclosure"** means, with respect to Personal Information:

    1. The Release of Personal Information Collected by an Operator from a Child in identifiable form for any purpose, except where an Operator provides such information to a person who provides Support for the Internal Operations of the Web site or Online Service; and

    2. Making Personal Information Collected by an Operator from a Child publicly available in identifiable form by any means, including but not limited to a public posting through the Internet, or through a personal home page or screen posted on a Web site or online service; a pen pal service; an electronic mail service; a message board; or a chat room.

I. **"Internet"** means collectively the myriad of computer and telecommunications facilities, including equipment and operating software, which comprise the interconnected world-wide network of networks that employ the Transmission Control Protocol/Internet Protocol, or any predecessor or successor protocols to such protocol, to communicate information of all kinds by wire, radio, or other methods of transmission.

J. **"Location Information"** means the following information, when linkable to a specific consumer, computer, or device: (a) information about a consumer's location that is collected through an application

4

programming interface; or (b) information about a consumer's location that is inferred from basic service set identifiers (BSSIDs).

K.  **"Obtaining Verifiable Parental Consent"** means making any reasonable effort (taking into consideration available technology) to ensure that before Personal Information is Collected from a Child, a Parent of the Child:

1.  Receives notice of the Operator's Personal Information Collection, use, and Disclosure practices; and

2.  Authorizes any Collection, use, and/or Disclosure of the Personal Information.

L.  **"Online Contact Information"** means an e-mail address or any other substantially similar identifier that permits direct contact with a person online, including but not limited to an instant messaging user identifier, a voice over internet protocol (VOIP) identifier, or a video chat user identifier.

M.  **"Operator"** means any person who operates a Web site located on the Internet or an online service and who Collects or maintains Personal Information from or about the users of or visitors to such Web site or online service, or on whose behalf such information is Collected or maintained, or offers products or services for sale through that Web site or online service, where such Web site or online service is operated for commercial purposes involving commerce among the several States or with one or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or foreign nation; or between the District of Columbia and any State, territory, or foreign nation. Personal Information is Collected or maintained on behalf of an Operator when:

1.  It is Collected or maintained by an agent or service provider of the

Operator; or

2.     The Operator benefits by allowing another Person to Collect Personal Information directly from users of such Web site or online service.

N.     **"Parent"** includes a legal guardian.

O.     **"Person"** means any individual, partnership, corporation, trust, estate, cooperative, association, or other entity.

P.     **"Personal Information"** means individually identifiable information about an individual Collected online, including:

1.     A first and last name;

2.     A home or other physical address including street name and name of a city or town;

3.     Online Contact Information;

4.     A screen or user name where it functions in the same manner as Online Contact Information;

5.     A telephone number;

6.     A Social Security number;

7.     A persistent identifier that can be used to recognize a user over time and across different Web sites or online services. Such persistent identifier includes but is not limited to a customer number held in a cookie, an IP address, a processor or device serial number, or unique device identifier;

8.     A photograph, video, or audio file where such file contains a Child's image or voice;

9.     Geolocation information sufficient to identify street name and name of a city or town; or

10.    Information concerning the Child or the Parents of that Child that the Operator Collects online from the Child and combines with an

identifier described in this definition.

Q.   **"Release of Personal Information"** means the sharing, selling, renting, or transfer of Personal Information to any Third Party.

R.   **"Service Provider"** means an entity that performs services for and at the direction of Defendant.  Provided, however, that an entity does not become a Service Provider solely because of that entity's marketing, purchase, or sale of digital advertisements in an Ad Tech Service operated by Defendant.

S.   **"Support for the Internal Operations of the Web site or Online Service"** means

    1.   Those activities necessary to:

        a.   Maintain or analyze the functioning of the Web site or online service;

        b.   Perform network communications;

        c.   Authenticate users of, or personalize the content on, the Web site or online service;

        d.   Serve contextual advertising on the Web site or online service or cap the frequency of advertising;

        e.   Protect the security or integrity of the user, Web site, or online service;

        f.   Ensure legal or regulatory compliance; or

        g.   Fulfill a request of a Child as permitted by § 312.5(c)(3) and (4) of the COPPA Rule;

    2.   So long as the information Collected for the activities listed in (1)(a) – (g) of this definition is not used or Disclosed to contact a specific individual, including through behavioral advertising, to amass a profile on a specific individual, or for any other purpose.

T.   **"Third Party"** means any Person who is not:

1.      An Operator with respect to the Collection or maintenance of Personal Information on the Web site or online service; or

2.      A Person who provides Support for the Internal Operations of the Web site or Online Service and who does not use or Disclose information protected under this part for any other purpose.

U.      **"Web site or Online Service Directed to Children"** means a commercial Web site or online service, or portion thereof that is targeted to Children.

## ORDER

### I.      INJUNCTION CONCERNING COLLECTION OF PERSONAL INFORMATION FROM CHILDREN

IT IS ORDERED that Defendant and Defendant's officers, agents, employees, and attorneys who receive actual notice of this Order, whether acting directly or indirectly, in connection with Defendant operating a Web site or Online Service Directed to Children or operating a Web site or online service that has actual knowledge that it is Collecting or maintaining Personal Information from a Child, are hereby permanently restrained and enjoined from (A) Collecting, using, and Disclosing Personal Information from Child-directed properties without Verifiable Parental Consent unless the Children's Online Privacy Protection Rule, 16 C.F.R. Part 312 (attached as Appendix A [Doc. # 3-1 at 26-33[1]]), provides an exception to Obtaining Verifiable Parental Consent, or (B) violating the Children's Online Privacy Protection Rule, 16 C.F.R. Part 312 (attached as Appendix A).

### II.      INJUNCTION PROHIBITING MISREPRESENTATIONS

IT IS FURTHER ORDERED that Defendant and Defendant's officers, agents, employees, and attorneys who receive actual notice of this Order, whether acting directly or indirectly, in connection with any Defendant-operated Web site

---

[1] Page references herein are to the page numbers inserted by the CM/ECF system.

or online service, must not materially misrepresent in any manner, expressly or by implication:

A.    Consumers' ability to opt out of Defendant's Collection, maintenance, use, Disclosure of, or provision of access to Covered Information;

B.    The extent to which Defendant Collects, maintains, uses, Discloses, or provides access to Covered Information;

C.    The extent to which Defendant complies with the COPPA Rule and the measures Defendant takes to comply with the COPPA Rule; or

D.    The extent to which Defendant otherwise protects the privacy, security, availability, confidentiality, or integrity of Covered Information.

## III.    INJUNCTION REQUIRING CONSENT FOR COLLECTION OF LOCATION INFORMATION

IT IS FURTHER ORDERED that Defendant and Defendant's officers, agents, employees, and attorneys who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from collecting Location Information through Defendant's software development kit(s) for mobile applications without first confirming that:

A.    The consumer has provided Affirmative Express Consent for the collection of Location Information to the mobile application that has integrated Defendant's software development kit(s);

B.    The consumer has not expressed, through any applicable operating system, device, or mobile application permission or setting, that the consumer does not consent to, or revokes consent to, the collection of Location Information from such mobile application; and

C.    The consumer has not expressed through any applicable operating system, device, or mobile application permission or setting, that the consumer's consent to the collection of Location Information from such mobile application is limited to a level of accuracy that is less precise

than the Location Information that is to be collected or inferred by Defendant.

## IV.   MANDATED PRIVACY PROGRAM

IT IS FURTHER ORDERED that Defendant, and any business that Defendant controls directly, or indirectly, in connection with the Collection, maintenance, use, or Disclosure of, or provision of access to, Covered Information through an Ad Tech Service operated by Defendant, must, within sixty (60) days of issuance of this Order, establish and implement, and thereafter maintain, a comprehensive privacy program ("Privacy Program") that protects the privacy of such Covered Information. To satisfy this requirement, Defendant must, at a minimum:

A.    Document in writing the content, implementation, and maintenance of the Privacy Program;

B.    Provide the written program and any evaluations thereof or updates thereto to Defendant's board of directors or governing body or, if no such board or equivalent governing body exists, to a senior officer of Defendant responsible for Defendant's Privacy Program at least once every twelve (12) months;

C.    Designate a qualified employee or employees to coordinate and be responsible for the Privacy Program;

D.    Assess and document, at least once every twelve (12) months, internal and external risks to the privacy of Covered Information that could result in the unauthorized Collection, maintenance, use, or Disclosure of, or provision of access to, Covered Information;

E.    Design, implement, maintain, and document safeguards that control for the material internal and external risks Defendant identifies to the privacy of Covered Information identified in response to sub-Provision IV.D. Each safeguard must be based on the volume and sensitivity of the

10

Covered Information that is at risk, and the likelihood that the risk could be realized and result in the unauthorized Collection, maintenance, use, or Disclosure of, or provision of access to, Covered Information. Such safeguards must also include:

1.  Regular privacy and data security training programs for all (1) employees and (2) independent contractors providing services to the Defendant's technology team, in each case on at least an annual basis, updated to address any identified internal or external risks and safeguards implemented pursuant to this Order;

2.  Policies, procedures, and technical measures to comply with COPPA and the COPPA Rule;

3.  Policies, procedures, and technical measures to prevent the Collection, maintenance, use, or Disclosure of, or provision of access to, Covered Information inconsistent with Defendant's representations to consumers;

4.  For those apps that Defendant manually reviews for inclusion in Defendant's app categorization database, conduct an additional review of a subset of such included apps at least once every twelve (12) months with the first additional review occurring within forty-five (45) days of entry of this Order, to determine whether any apps participating in an Ad Tech Service operated by Defendant should be removed from participating in the Ad Tech Service because they are child-directed;

5.  Create a record of the child-directed apps that Defendant has banned or removed from participating in its Ad Tech Service; and

6.  Provide COPPA training, at least once every twelve (12) months, with respect to the proper identification of child-directed Web sites and apps, to assist employees and independent contractors who

analyze such sites and apps, including the traffic quality analysts, in performing their duties;

F.   Assess, at least once every twelve (12) months, the sufficiency of any safeguards in place to address the internal and external risks to the privacy of Covered Information, and modify the Privacy Program based on the results;

G.   Test and monitor the effectiveness of the safeguards at least once every twelve (12) months, and modify the Privacy Program based on the results;

H.   Select and retain Service Providers capable of safeguarding Personal Information they access through or receive from Defendant, and contractually require Service Providers to implement and maintain safeguards sufficient to address the internal and external risks to the privacy of Personal Information; and

I.   Evaluate and adjust the Privacy Program in light of any changes to Defendant's operations or business arrangements, new or more efficient technological or operational methods to control for the risks identified in Provision IV.D of this Order, or any other circumstances that Defendant knows or has reason to know may have an impact on the effectiveness of the Privacy Program or any of its individual safeguards. At a minimum, Defendant must evaluate the Privacy Program at least once every twelve (12) months and modify the Privacy Program based on the results.

## V.   PRIVACY ASSESSMENTS BY A THIRD PARTY

IT IS FURTHER ORDERED that, in connection with Defendant's compliance with Provision IV of this Order titled Mandated Privacy Program, Defendant must obtain initial and biennial assessments ("Assessments"):

A.   The Assessments must be obtained from a qualified, objective, independent third-party professional ("Assessor"), who: (1) uses

procedures and standards generally accepted in the profession; (2) conducts an independent review of the Privacy Program; (3) retains all documents relevant to each Assessment for five (5) years after completion of such Assessment; and (4) will provide such documents to the Commission within ten (10) days of receipt of a written request from a representative of the Commission. No documents may be withheld on the basis of a claim of confidentiality, proprietary or trade secrets, work product protection, attorney-client privilege, statutory exemption, or any similar claim.

B.    For each Assessment, Defendant must provide the Associate Director for Enforcement for the Bureau of Consumer Protection at the Federal Trade Commission with the name, affiliation, and qualifications of the proposed Assessor, whom the Associate Director shall have the authority to approve in his or her sole discretion.

C.    The reporting period for the Assessments must cover: (1) the first 180 days after the Privacy Program has been put in place for the initial Assessment; and (2) each two-year period thereafter for twenty (20) years after issuance of the Order for the biennial Assessments.

D.    Each Assessment must, for the entire assessment period: (1) determine whether Defendant has implemented and maintained the Privacy Program required by Provision IV of this Order, titled Mandated Privacy Program; (2) assess the effectiveness of Defendant's implementation and maintenance of sub-Provisions IV.A-I; (3) identify any gaps or weaknesses in, or instances of material noncompliance with, the Privacy Program; (4) address the status of gaps or weaknesses in, or instances of material non-compliance with, the Privacy Program that were identified in any prior Assessment required by this Order; and (5) identify specific evidence (including but not limited to documents reviewed, sampling and

testing performed, and interviews conducted) examined to make such determinations, assessments, and identifications, and explain why the evidence that the Assessor examined is (a) appropriate for assessing an enterprise of Defendant's size, complexity, and risk profile; and (b) sufficient to justify the Assessor's findings. No finding of any Assessment shall rely primarily on assertions or attestations by Defendant's management. The Assessment must be signed by the Assessor, state that the Assessor conducted an independent review of the Privacy Program and did not rely primarily on assertions or attestations by Defendant's management, and state the number of hours that each member of the assessment team worked on the Assessment. To the extent that Defendant revises, updates, or adds one or more safeguards required under Provision IV of this Order during an Assessment period, the Assessment must assess the effectiveness of the revised, updated, or added safeguard(s) for the time period in which it was in effect, and provide a separate statement detailing the basis for each revised, updated, or additional safeguard.

E.   Each Assessment must be completed within sixty (60) days after the end of the reporting period to which the Assessment applies. Unless otherwise directed by a Commission representative in writing, Defendant must submit the initial Assessment to the Commission within ten (10) days after the Assessment has been completed via email to DEbrief@ftc.gov or by overnight courier (not the U.S. Postal Service) to Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, D.C. 20580. The subject line must begin, "*United States v. OpenX Technologies, Inc.*" All subsequent biennial Assessments must be retained by Defendant until the Order is terminated and provided to the

Associate Director for Enforcement within ten (10) days of request.

## VI.    COOPERATION WITH THIRD-PARTY PRIVACY ASSESSOR

IT IS FURTHER ORDERED that Defendant, whether acting directly or indirectly, in connection with any Assessment required by Provision V of this Order titled Privacy Assessments by a Third Party, must:

A.    Provide or otherwise make available to the Assessor all information and material in its possession, custody, or control that is relevant to the Assessment for which there is no reasonable claim of privilege.

B.    Provide or otherwise make available to the Assessor information about Defendant's network(s) and all of Defendant's IT assets so that the Assessor can determine the scope of the Assessment, and visibility to those portions of the network(s) and IT assets deemed in scope; and

C.    Disclose all material facts to the Assessor, and not misrepresent in any manner, expressly or by implication, any fact material to the Assessor's: (1) determination of whether Defendant has implemented and maintained the Privacy Program required by Provision IV of this Order, titled Mandated Privacy Program; (2) assessment of the effectiveness of the implementation and maintenance of sub-Provisions IV.A-I; or (3) identification of any gaps or weaknesses in, or instances of material noncompliance with, the Privacy Program.

## VII.    ANNUAL CERTIFICATION

IT IS FURTHER ORDERED that Defendant must:

A.    One year after the issuance date of this Order, and each year thereafter for ten (10) years after entry of the Order, provide the Commission with a certification from a senior corporate manager, or, if no such senior corporate manager exists, a senior officer of Defendant responsible for Defendant's Privacy Program that:  (1) Defendant has established, implemented, and maintained the requirements of this Order; and (2)

Defendant is not aware of any material noncompliance that has not been (a) corrected or (b) disclosed to the Commission.  The certification must be based on the personal knowledge of the senior corporate manager, senior officer, or subject matter experts upon whom the senior corporate manager or senior officer reasonably relies in making the certification.

B. Unless otherwise directed by a Commission representative in writing, submit all annual certifications to the Commission pursuant to this Order via email to DEbrief@ftc.gov or by overnight courier (not the U.S. Postal Service) to Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, D.C. 20580.  The subject line must begin, "United States v. OpenX Technologies, Inc."

## VIII.   MONETARY JUDGMENT FOR CIVIL PENALTY

IT IS FURTHER ORDERED that:

A. Judgment in the amount of seven million five hundred thousand dollars ($7,500,000) is entered in favor of Plaintiff against Defendant, as a civil penalty.

B. Defendant is ordered to pay to Plaintiff, by making payment to the Treasurer of the United States, two million dollars ($2,000,000), which, as Defendant stipulates, its undersigned counsel holds in escrow for no purpose other than payment to Plaintiff.  Such payment must be made within seven (7) days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of Plaintiff. Upon such payment, the remainder of the judgment is suspended, subject to the Subsections below.

C. Plaintiff's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendant's sworn financial statements and related documents

16

(collectively, "Financial Attestations") submitted to the Commission, including:

1. The April 16, 2021 letter from Defendant's counsel, Julia Tama, to Plaintiff's counsel, Sarah Choi and Kevin Moriarty;

2. The documentation enclosed as exhibits to the April 16, 2021 letter from Defendant's counsel, Julia Tama, to Plaintiff's counsel, Sarah Choi and Kevin Moriarty;

3. The April 30, 2021 e-mail from Defendant's counsel, Carter Greenbaum and attachments thereto; and

4. The May 25, 2021 e-mail from Defendant's counsel and attachments thereto.

D. The suspension of the judgment will be lifted as to Defendant if, upon motion by Plaintiff, the Court finds that Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the Financial Attestations.

E. If the suspension of the judgment is lifted, the judgment becomes immediately due as to Defendant in the amount specified in Subsection A of this Section (which the parties stipulate only for purposes of this Section represents the amount of civil penalty for the violations alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## IX.   ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A. Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B. The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the

17

Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order.

C.     Defendant acknowledges that its Taxpayer Identification Number(s), which Defendant must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

## X.     DATA DELETION

IT IS FURTHER ORDERED that Defendant, within ninety (90) days of entry of this Order, shall delete all Ad Request Data collected prior to the entry of this Order, including any sample of the Ad Request Data used for internal analytics.

## XI.     NOTICE TO DEMAND-SIDE PARTNERS

IT IS FURTHER ORDERED that:

A.     Defendant, within thirty (30) days of entry of this Order, shall transmit the notice attached as Exhibit A [Doc. # 3-1 at 35] ("Notice") by email to all of OpenX's demand-side partners.

B.     Defendant, within thirty-five (35) days of entry of this Order, shall provide the Commission with a certification, signed by OpenX's Chief Executive Officer on behalf of OpenX, that OpenX has transmitted the Notice to all of OpenX's demand-side partners.

## XII.     ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtains acknowledgments of receipt of this Order:

A.     Defendant, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For ten (10) years after entry of this Order, Defendant must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC

managers and members; (2) all employees having managerial responsibilities relating to the Collection, retention, storage, or security of Covered Information, and all agents and representatives who have managerial responsibility for the operation of any of Defendant's Web sites or online services; and (3) any business entity resulting from any change in structure as set forth in the Provision titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  To all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order.

## XIII.    COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission:

A.     One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury, which does the following: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and Plaintiff may use to communicate with Defendant; (b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business; (d) describe in detail whether and how Defendant is in compliance with each Provision of this Order; (e) provide a copy of each different version of any privacy notice posted on each Web site or online service operated by Defendant; (f) provide a statement setting forth OpenX's treatment of Child-directed Web sites and online services; and (g) provide a copy of each Order Acknowledgment

19

obtained pursuant to this Order, unless previously submitted to the Commission.

B. For ten (10) years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following: (a) any designated point of contact; or (b) the structure of Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C. Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against each Defendant within fourteen (14) days of its filing.

D. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, D.C. 20580. The subject line must begin: "United States v. OpenX Technologies, Inc."

## XIV.    RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for ten (10) years after entry of the Order, and retain each such record for five (5) years.  Specifically, Defendant must create and retain the following records:

A.    Accounting records showing the revenues from all goods or services sold;

B.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

C.    Copies of all consumer complaints relating to Defendant's Collection, maintenance, use, or Disclosure of Covered Information, whether received directly or indirectly, such as through a Third Party, and any response; and

D.    A copy of each materially different document widely disseminated or caused to be widely disseminated by Defendant containing any representation regarding Defendant's Collection, maintenance, use, or Disclosure practices pertaining to Covered Information.

## XV.    COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order, including any failure to transfer any assets as required by this Order:

A.    Within fourteen (14) days of receipt of a written request from a representative of the Commission or Plaintiff, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission and Plaintiff are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.  For matters concerning this Order, the Commission and Plaintiff are authorized to communicate directly with Defendant. Defendant must permit representatives of the Commission and Plaintiff to interview any employee or other Person affiliated with Defendant who has agreed to such an interview. The Person interviewed may have counsel present.

C.  The Commission and Plaintiff may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

### XVI.    RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order

**IT IS SO ORDERED.**

DATED:  December 27, 2021

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE